WILDE & ASSOCIATES
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787
bk@wildelaw.com

and

MARK S. BOSCO
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone (602) 255-6000

Meritage Mortgage Loan Trust 2005-2
06-70118/2000116944

E-filed on 3/15/06

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEVADA

| IN RE: | No. 06-10055-LBR |
|---|---|
| Paul Anthony Gioeli and Angelic Cada Gioeli, | Chapter 13 |
| Debtors. | Date: March 30, 2006<br>Time: 1:30 pm |

## **OBJECTION TO CONFIRMATION OF PROPOSED CHAPTER 13 PLAN**

Meritage Mortgage Loan Trust 2005-2, Secured Creditor in the above-entitled

Bankruptcy proceeding, hereby submits the following objection to that certain Chapter 13

Plan proposed by the Debtor:

///

///

1       1.     This objecting secured creditor holds the first Deed of Trust on the subject

2  property generally described as 1832 Twin Oaks Ave., Las Vegas, NV 89156. As of

3  January 18, 2006, the amount in default was actually $4,082.81, pursuant to the proof of

4  claim filed on March 13, 2006. Secured creditor requests that the arrearages as set forth in

5  the Proof of Claim be filed through the Plan. A copy of the Secured Creditor's Proof of

6  Claim is attached hereto as Exhibit "A" and made a part hereof by this reference.

7       2.     The Debtor's Chapter 13 Plan combines the arrearage owing to the 1st and

8  2nd lien holders as $15,316.00 over the life of the Plan. A copy of the Debtor's Chapter 13

9  Plan is attached hereto as Exhibit "B".

10      Any Chapter 13 Plan proposed by the Debtor must provide for and eliminate all of

11 the Objections specified above in order to be feasible and to provide adequate protection to

12 this Secured Creditor.

13      It is respectfully requested that Confirmation of the Chapter 13 Plan as proposed by

14 the Debtor be denied.

15      WHEREFORE, Secured Creditor prays as follows:

16      1. That confirmation of the proposed Chapter 13 Plan be denied;

17      2. For attorney's fees and costs incurred herein;

18      3. For such other and further relief as this Court deems just and proper.

19

20      DATED this 15 day of March , 2006.

21
                                    WILDE & ASSOCIATES
22

23
                         By
24                          Gregory L. Wilde, Esq.
                            Attorney for Secured Creditor
25                          208 South Jones Boulevard
                            Las Vegas, NV 89107
26

# EXHIBIT "A"

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT | District of Nevada | PROOF OF CLAIM |
|---|---|---|

Name of Debtor: PAUL ANTHONY GIOELI, ANGELIC CADA GIOELI

Case Number: 06-10055
Chapter: 13

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property): Saxon Mortgage Services, Inc.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
Saxon Mortgage Services, Inc.
4708 Mercantile Drive North
Fort Worth, TX 76137

Telephone number:  817-665-7200

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☒ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
XXX-XX-6780 / XXXXX6944 / POC-0099420

Check here if this claim  ☐ replaces   ☐ amends   a previously filed claim, dated:

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal Injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (Fill out below)
  Last four digits of SS#:
  Unpaid compensation for services performed
  from _____ to _____
       (date)      (date)

**2. Date debt was incurred:**  03/10/2005

**3. If court judgment, date obtained:**

**4.** Classification of Claim. Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim  $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

Unsecured Priority Claim
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority
Amount entitled to priority  $ _____
Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C.§ 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C.§ 507(a)(5).

Secured Claim
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Value of Collateral:
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 4,082.81

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C.§ 507(a)(7).
☐ Taxes or penalties owed to a governmental units – 11 U.S.C.§ 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C.§ 507(a)(_).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5.** Total Amount of Claim at Time Case Filed: $

| 49,291.65 | 49,291.65 |
|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6.** CREDITS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7.** Supporting Documents: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.** Date-Stamped Copy: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date: 03/09/2006

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

/s/ Gene R. Clark   Miller & Clark, PC, As agents for creditors

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Statement of Pre-Petition Arrears

3/9/2006

Debtor(s) Name: PAUL ANTHONY  GIOELI / ANGELIC CADA  Servicer:           Saxon Mortgage Services, Inc.
GIOELI
Court Case #:    06-10055                          Servicer Loan #:  XXXXXX6944
Chapter #:       13

```
┌─────────────────────────────────────────────────────────┐
│      Total Pre-Petition Arrears    $4,082.81             │
└─────────────────────────────────────────────────────────┘
```

## Itemized Statement of Arrears

| From | To | Type of Charge | Units | Amount | Total |
|------|------|------|------|------|------|
| 7/1/2005 | 1/1/2006 | Payments | 7 | $541.51 | $3,790.57 |
| | | BPO Fee | | $56.00 | $56.00 |
| | | Property Inspection Fee | | $39.75 | $39.75 |
| | | Accrued Late Charges | | $189.49 | $189.49 |
| | | Breach Letters | | $7.00 | $7.00 |

# Statement of Total Debt

3/9/2006

**Debtor(s) Name:** PAUL ANTHONY GIOELI / ANGELIC    **Servicer:**    Saxon Mortgage Services, Inc.
CADA GIOELI

**Court Case #:** 06-10055                                      **Servicer Loan #:**   XXXXXX6944
**Chapter #:** 13

| | | Total Debt | $49,291.65 |

## Itemized Statement of Total Debt

| Type of Charge | Units | Amount | Total |
|---|---|---|---|
| Principal Balance | 1 | $44,964.41 | $44,964.41 |
| Int. from Last Paid Installment | 1 | $4,035.00 | $4,035.00 |
| BPO Fee | | $56.00 | $56.00 |
| Property Inspection Fee | | $39.75 | $39.75 |
| Accrued Late Charges | | $189.49 | $189.49 |
| Breach Letters | | $7.00 | $7.00 |

02/11/2006 00:40 FAX

2000116944    003/026

|||||||||||||||||||||||||||||||||||||||||
20050316-0001744

Fee: $25.00
N/C Fee: $0.00

03/16/2005          10:08:11
T20050047500
Requestor:
 NETCO TITLE

Frances Deane          JKR
Clark County Recorder    Pgs: 9

*10002-08288*
*6205142*

Assessor's Parcel Number:
140-22-314-013
Return To:
HERITAGE MORTGAGE CORPORATION
9710 TWO NOTCH ROAD
COLUMBIA, SC  29223

Prepared By:
HERITAGE MORTGAGE CORPORATION
6000 SW MEADOWS ROAD, SUITE 500
LAKE OSWEGO, OR  97035
Recording Requested By:
HERITAGE MORTGAGE CORPORATION

## DEED OF TRUST

Loan Number: 1000208288                    MIN 100110710002082880
   THIS DEED OF TRUST is made this    10th    day of March, 2005
among the Grantor,
PAUL A. GIOELI AND ANGELIC C. GIOELI, HUSBAND AND WIFE

(herein "Borrower").

NETCO, INC

(herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter
defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS.

HERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION
existing under the laws of           OREGON              , and has an address of
6000 SOUTHWEST MEADOWS ROAD, SUITE 500
LAKE OSWEGO, OR  97035

NEVADA- SECOND MORTGAGE-1/80-FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Form 3829  Amended 2/99
VMP-76N(NV) (0307).01       Initials:
Page 1 of 8
        VMP Mortgage Solutions
        (800)521-7291      DDS-5NV

||||||||| ||||||||||||||||||||||||||

⏧004/026

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of                  CLARK             , State of Nevada:
LOT 13 IN BLOCK 3 OF KINGSRIDGE UNIT 1, AS SHOWN BY MAP THEREOF ON
FILE IN BOOK 23 OF PLATS, PAGE 52 IN THE OFFICE OF THE COUNTY RECORDER
OF CLARK COUNTY, NEVADA.

Balloon Rider attached hereto and made a part hereof.

which has the address of            1832 TWIN OAKS AVENUE       ,        LAS VEGAS     ,
                            [Street]                          [City]
Nevada           89156                (herein "Property Address");
                 [ZIP Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property". Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated March 10, 2005             and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $44,980.00           , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on April 01, 2020         ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein 'Funds') equal to one-twelfth of the yearly taxes and

Initials: PAC
ACG
Form 3829

assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such a holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

⬛-76N(NV) (0307).01 DDS-5NV          Page 3 of 8          Initials: _____ Form 3829

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the

☒-76N(NV) (0307).01 DDS-5NV          Page 4 of 8                    Initials: ___

                                                                   Form 3829

provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

Initials: _____ Form 3829

☒008/026

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of: (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

23. **Assumption Fee.** Lender may charge an assumption fee of U.S. $
(As per schedule of fees in effect at time of assumption.)

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

⊕-76N(NV) (0307).01 DDS-5NV          Page 6 of 8          Initials: _____          Form 3829

ACG

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)
                        -Borrower
PAUL A. GIOELI

_____ (Seal)
                        -Borrower
ANGELIC C. GIOELI

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

STATE OF NEVADA
COUNTY OF *Clark*

This instrument was acknowledged before me on          *3-11-05*                by

*Paul A. Gioeli and Angela C. Gioeli.*

Mail Tax Statements To:
PAUL A. GIOELI
1832 TWIN OAKS AVENUE
LAS VEGAS, NV 89156

-76N(NV) (0307).01 DDS-5NV          Page 8 of 8                    Initials:

Form 3829

@011/026

# BALLOON PAYMENT RIDER

THIS RIDER is attached to and made a part of that certain Deed of Trust from
PAUL A. GIOELI AND ANGELIC C. GIOELI, HUSBAND AND WIFE

to MERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION
dated        MARCH 10, 2005                , in the principal amount of $ 44,980.00

Your monthly payments on the above loan are based on an amortization period of  360   months.
However, your loan will be payable in full at the end of  180   months. As a result, you will have a
balloon payment due on APRIL 01, 2020

A balloon payment exists when your monthly installments of principal and interest do not fully
reduce your debt obligation by the end of your loan period. The balance of the loan which remains
unpaid when your loan matures is due in one lump sum. This lump sum is known as a balloon payment.

_____  3-11-05
PAUL A. GIOELI                      DATE

_____  3-11-05
ANGELIC C. GIOELI                   DATE

DDS-TR8

I CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL.

X _____

Loan Number: 1000208288

## NOTE

MIN: 100110710002082880

March 10, 2005
*Date*

LAS VEGAS
*City*

NEVADA
*State*

1832 TWIN OAKS AVENUE
LAS VEGAS, NV  89156
*Property Address*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 44,980.00          (this amount will be called
"principal"), plus interest, to the order of the Lender. The Lender is
HERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION
. I understand that the Lender may transfer this
Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be
called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of          14.240 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 541.51
I will make my payments on the          1st          day of each month beginning on  May 01
2005          . I will make these payments every month until I have paid all of the principal and interest and any other charges,
described below, that I may owe under this Note. If, on April 01, 2020
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at NetBank, P.O. Box 105383
Atlanta, GA  30348          or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
. If the Note Holder has not received the full amount of any of my monthly payments by the end of 15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.000 % of my overdue payment, but not less than U.S. $          N/A          , and not more than
U.S. $          N/A          . I will pay this late charge only once on any late payment.
. (B) Notice From Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me
that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on
which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in
default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the
interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.
(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be
paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example,
reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated
March 10, 2005          , protects the Note Holder from possible losses which might result if I do not keep
the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to
make immediate payment in full of all amounts that I owe under this Note.

---

NEVADA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

Form 3929

-76(NV) 9204)
DDS NV7

Page 1 of 2

VMP MORTGAGE FORMS - (800)521-7291

Initials:

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)  
PAUL A. GIOELI  -Borrower

_____ (Seal)  
ANGELIC C. GIOELI  -Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

*[Sign Original Only]*

# BALLOON NOTE ADDENDUM

[x]    **BALLOON PAYMENT**

THIS LOAN IS PAYABLE IN FULL AT THE END OF    15    YEARS. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND THE UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT ANY TIME. YOU WILL THEREFORE BE REQUIRED  TO MAKE.PAYMENT OUT OF OTHER ASSETS YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER WILLING TO LEND YOU THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERED HIGHER OR LOWER THAN THE INTEREST RATE ON THIS LOAN.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF YOU OBTAIN REFINANCE FROM THE SAME LENDER.

_____    3-11-05
PAUL A. GIOELI                              DATE

_____    3-11-05
ANGELIC C. GIOELI                        DATE

DDS-TR4

## MULTI-STATE
## PREPAYMENT FEE ADDENDUM TO THE NOTE
### (1st and 2nd lien)

Loan Number: 1000208288
Property: 1832 TWIN OAKS AVENUE                      Loan Amount: $44,980.00
LAS VEGAS, NV 89156

This Prepayment Fee Addendum ("Addendum") is made this    10th    day of March, 2005
and is incorporated into and amends and supplements the Note dated the same date as this Addendum made by the
undersigned, which debt is secured by a mortgage, deed of trust, security deed, or similar security instrument (the
"Security Instrument") dated the same date as this Addendum and the Note.

Notwithstanding anything to the contrary set forth in the Note or Security Instrument, I agree that the
section of the Note entitled BORROWER'S RIGHT TO PREPAY is deleted in its entirety and replaced with the
following language:

BORROWER'S RIGHT TO PREPAY

Subject to the prepayment fee provided below, I have the right to make payments of Principal at any time
before they are due.  A payment of Principal only is known as a "Prepayment."  A "full prepayment" is the
prepayment of the entire principal due under the Note.  A payment of only part of the unpaid principal is known
as a "partial prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.
I may not designate a payment as a Prepayment if I have not made all payments then due under this Note.

If I make a partial or full Prepayment within    2    year(s) of the date of the Note, I agree to pay the
Note Holder a Prepayment fee.  The Prepayment fee I will pay shall be an amount equal to six months advance
interest, at the contract rate of interest then in effect, on all amounts prepaid in any 12 month period in excess of
20 percent of the original principal amount of my loan.

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under this
Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the
Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a
partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

I will not be obligated to pay a Prepayment fee (i) if my mortgage debt is accelerated as the result of my
default in making my mortgage payments; or (ii) if it violates federal law.

### NOTICE TO BORROWER(S):

**DO NOT SIGN THIS ADDENDUM BEFORE YOU READ IT.
THIS ADDENDUM PROVIDES FOR THE PAYMENT OF A FEE IF YOUR
LOAN IS REPAID PRIOR TO THE SECOND    ANNIVERSARY OF THE DATE OF
THE LOAN.**

WITNESS THE HANDS AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)         _____(Seal)
PAUL A. GIOELI            -Borrower         ANGELIC C. GIOELI            -Borrower

_____(Seal)         _____(Seal)
-Borrower                                   -Borrower

Multi-State Prepayment Fee Addendum                      Revision Date: 11/29/04
DDS-TR2

# EXHIBIT "B"

Attorney for Debtor(s):
Name: Paul + Angelic Gioeli          ORIGINAL
Bar No.:
        1832 Twin Oaks Ave.
        Las Vegas, NV  89156
Phone:  (702) 438-9105

Space reserved for Bankruptcy Clerk

RECEIVED & FILED

FEB   2 51 PM '06

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA
(SOUTHERN DIVISION OF NEVADA)

PATRICIA GRAY
CLERK

In re:                          )  CASE NO. BK-S- 06-10055 - LBR
                                )  CHAPTER 13
     Paul A. Gioeli             )  CHAPTER 13 PLAN - # 1
                                )  PLAN MODIFICATION: ( ) NA ( ) Before
     Angelic C. Gioeli          )      ( ) After Original Confirmation
                                )  Confirmation Hearing;
          Debtor(s).            )  DATE:  3/30/06
                                )  TIME:      3:30pm
                                )

1.   NOTICE TO CREDITORS:  *This Plan may ultimately provide a distribution to
general unsecured creditors.  Creditors should* __TIMELY__ *file proofs of claim to
participate in such distribution.*

2.   INCORPORATION OF CHAPTER 13 PLAN GUIDELINES: This plan incorporates the
Chapter 13 Plan Guidelines for Las Vegas, Nevada (hereinafter referred to as
"Guidelines"). Any creditor may request a copy of the Guidelines from the
Chapter 13 Trustee or the attorney for Debtor(s).

3.   PLAN PAYMENT SCHEDULE:                                          Amount
     A.   (i)  $ 255.37 per month for  60  months            $ 15,316
              (Debtor(s) shall not pay less than 36
              monthly payments unless Plan proposes
              to pay 100% to all filed and allowed claims)
              Payments to commence_____
              (Date must match Special Directive to Debtor(s)
              and Their Attorney)
          (ii) Payments shall increase as follows:
              (State reason, i.e., paid in full direct
              during course of Plan or wage increase, etc.)
              $_____commencing_____      $_____
              Reason:_____
              $_____commencing_____      $_____
              Reason:_____
     B.   Non-monthly payments:
          All lump sum payments must be paid into the Plan
          at least 6 months prior to proposed Plan expiration
          (Court approval may be required).
          Source
          _____         $_____
          _____         $_____

1

*If amount is pur~ ~nt to a settlement, see Exhibit at  ~ed.
(must equal line 4.I.)

4. CLASSIFICATION OF CLAIMS PAID BY TRUSTEE:
   A.  ADMINISTRATIVE CLAIMS:
      (1) Debtor's Attorney Compensation
         (Must comply with Guidelines):
         a.  Basic Services:
            Attorney fees and costs  $_____
            Filing fee  $_____
            TOTAL FOR ATTORNEY  $_____
            Less: Amount pre-paid
              By Debtor  ($_____)
            Amount to be paid
              By Trustee       $ -O-_____
         b.  Estimated additional fees
            & costs:
            Attorney fees & costs  $_____
            Less: Amount pre-paid
              By Debtor  ($_____)
            Amount to be paid
             By Trustee per
             Court order      $ -O-_____

      (2) Other professionals (see Guidelines):
         a.  Claimant:_____
            Type of service:_____
            Amount of claim:  $_____
            Less: Amount pre-paid
              By Debtor  ($_____)
            Amount to be paid
             By Trustee      $ -O-_____

      (3) Other administrative claims:  $ -O-_____

The aforementioned administrative claims shall be paid simultaneously with adequate protection payments, if any, on allowed secured claims as set forth at 4(B)(3) as follows:
         a.  Minimum monthly payment to
            attorney:  $_____/mo.
         b.  Minimum monthly payment to
            other professional:  $_____/mo.

      (4)  Trustee Compensation: See 4(H).

   B.  SECURED CLAIMS:
      (1)  Taxes (Federal, State, City and County)
         a)  Creditor:_____
            Period/Type:_____  Claim amount  $ -O-
            Interest rate _____%  Approx. Interest $_____

2

    (2)   Arrearages
        a)   Creditor:_____
            Collateral:_____ Pre-petition claim $_____
            Interest rate: _____% Approx. Interest   $_____
            Direct payment $_____/mo.  To commence:_____
                                TOTAL CLAIM          $ - O -

   (3)   Obligations Paid in Full by Trustee *(refer to*
           *Section 4(B)(3) of the Guidelines)*

    a)  Real Property
      i)   Creditor: HomEq (1st) / Saxon (2nd)
          Collateral: ResidonCe Full claim amount  $ 15,316
          Interest rate: 8.125/14.2%  Approx. Interest $ 15,316
          Adequate protection payment $_____/mo.
                      TOTAL CLAIM         $ 15,316

      b)  Personal Property (vehicles, household goods,
          jewelry, etc.)
        i)   Creditor:_____
           Collateral:_____ Full claim amount   $_____
           Interest rate: _____% Approx. Interest   $_____
           Limited to fair market value of collateral: YES or NO
           Adequate protection payment $_____/mo.
                      TOTAL CLAIM          $  - O -

   (4)   Direct Payments to be made by Debtor that are <u>not</u>
       in arrears (including ongoing City and County taxes)
        a)   Creditor:_____
            Collateral:_____
            Regular monthly payment $_____/mo.
            Commence date _____  Final payment date ._____

   (5)   Collateral to be Surrendered
        a)   Creditor:_____
            Collateral:_____
            Location of Collateral:_____

C.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES:
        a)   Creditor:_____
            Collateral:_____
            Reject: yes/no  Returned to creditor: yes/no
            Assume: yes/no  Regular monthly payment $_____/mo.
                     No. of months remaining _____

D.  UNSECURED PRIORITY CLAIMS:

   (1)   Taxes (Federal, State, City and County)
        a)   Creditor:_____
            Period/Type:_____  Claim amount $_____
                      TOTAL CLAIM         $  - O -
   (2)   Child Support/Alimony
        a)   Creditor:_____
                      Pre-petition claim $_____

Direct pay, : $ _____ /mo.    To commence: _____

(3)  Other Priority
     a)  Creditor: _____
         Pre-petition claim $ _____
         Type of Priority: _____
         Approx. Interest $ _____
         Interest rate:          %
         To commence: _____ /mo.
         Direct payment $ _____
                                        TOTAL CLAIM          $ - 0 -

E.  UNSECURED NONPRIORITY CLAIMS:

    (1)  Special Class
         a)  Creditor: _____
             Reason for special class: _____
             Pre-petition claim $ _____
             Percentage to be paid  □ %
                                        TOTAL CLAIM          $ - 0 -

    (2)  General Unsecured
         a)  Approximate total amount of all claims  $ _____
             Approximate percentage to be paid
             APPROXIMATE AMOUNT TO BE PAID
             Is Approximate amount to be paid modifiable?  yes/no
             If no, explain: _____                        $ - 0 -

    (3)  Late-Filed
         a)  Approximate total amount of all claims  $ _____
             Approximate percentage to be paid
             APPROXIMATE AMOUNT TO BE PAID
             Is Approximate amount to be paid modifiable?  yes/no
             If no, explain: _____                        $ - 0 -

F.  POST-PETITION CLAIMS (11 U.S.C. §1305):
    (a)  Taxes (Federal), State, City and County)
         a)  Creditor: _____
             Period/Type: _____
             Claim amount $ _____
             Approx. Interest & penalties $ _____
                                        TOTAL CLAIM          $ - 0 -

    (b)  Other
         a)  Creditor: _____
             Type: _____
             Claim amount $ _____
             Approx. interest & penalties $ _____
                                        TOTAL CLAIM          $ - 0 -

G.  TOTAL CLAIMS PAID BY TRUSTEE:  (Add A-F)                 $ 15,316.00

H.  TRUSTEE COMPENSATION:
    (1)  Not to exceed 10% (divide F. by 9)                 $ _____

I.  TOTAL PLAN PAYMENTS TO TRUSTEE (Add G-H, must equal 3C) $ _____

5.  ORDER OF DISTRIBUTION BY TRUSTEE:  The Trustee shall distribute to
    allowed claims in the following order:

4

A.    Section 4(A) -    ~~ministrative Claims (unless~~    (5) ~~adequate~~
                                 protection payments shown)
B.    Section 4(B) - Secured Claims
C.    Section 4(F) - Post Petition Claims
D.    Section 4(D) - Unsecured Priority Claims
E.    Section 4(E) - Unsecured Nonpriority Claims

6.   LIENS TO BE AVOIDED BY MOTION:
     a)     Creditor:_____
            Collateral:_____
            Type of Lien:_____
            Value of Lien:_____

7.   LIQUIDATION VALUE:

     Liquidation value (from worksheet in Guidelines)         $_____

     Liquidation value to be paid to priority claims          $_____
     Liquidation value to be paid to non-priority claims      $_____

     Liquidation value is based on:_____

8.   SCHEDULES/STATEMENT OF FINANCIAL AFFAIRS:
     Copies of the Debtor(s) Schedules and Statement of Financial Affairs may
     be obtained from the United States Bankruptcy Court Clerk's Office, 300
     Las Vegas Blvd. South, Second Floor, Las Vegas, Nevada 89101. Documents
     may    also    be    viewed    via    the    Bankruptcy    Court's    website
     (www.nvb.uscourts.gov).

9.   SIGNATURE BY DEBTOR(S):

The undersigned Debtor(s), declare under penalties of perjury, that I have
read the foregoing Chapter 13 Plan, including any attached sheets, and I know
and understand the contents thereof and my obligations thereunder.

_____
Debtor

_____
Joint Debtor (if any)

5

E-filed on   3/15/06

1 WILDE & ASSOCIATES
Gregory L. Wilde, Esq.
2 Nevada Bar No. 004417
3 208 South Jones Boulevard
Las Vegas, Nevada 89107
4 Telephone: 702 258-8200
Fax: 702 258-8787
5 bk@wildelaw.com

6 and

7 MARK S. BOSCO
Arizona Bar No. 010167
8 TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
9 Phoenix, Arizona 85016
10 Telephone (602) 255-6000

11 Meritage Mortgage Loan Trust 2005-2
06-70118/2000116944

12 **UNITED STATES BANKRUPTCY COURT**

13 **SOUTHERN DISTRICT OF NEVADA**

14

15 IN RE:                                              No. 06-10055-LBR

16 Paul Anthony Gioeli and Angelic Cada Gioeli,        Chapter 13

17                                                     Date: March 30, 2006
Debtors.                                            Time: 1:30 pm
18

19

20

21

22 **CERTIFICATE OF MAILING OF OBJECTION TO CONFIRMATION OF PROPOSED**
23 **CHAPTER 13 PLAN**

24 I hereby certify that I am an employee of Wilde & Associates, and not a party to not

25 interested in the within matter; that on the 16th day of March , 2006, I

26 served ...

1   a copy of the Objection to Confirmation of the Proposed Chapter 13 Plan by electronic mail

2   and/or mailing a copy thereof enclosed in a sealed envelope with postage prepaid in the

3   United Sates Mail in Las Vegas, Nevada addressed as follows:

4

5   Paul Anthony Gioeli and Angelic Cada Gioeli
    1832 Twin Oaks Ave.

6   Las Vegas, NV  89156
    Debtors

7

8   Kathleen A. Leavitt
    302 E. Carson Avenue #300

9   Las Vegas, NV  89101
    Trustee

10

11

12

13
                                    An employee of Wilde & Associates
14

15

16

17

18

19

20

21

22

23

24

25

26